OPINION
This appeal is taken by the State of Ohio from the judgment entered by the Court of Common Pleas of Marion County granting Defendant- Appellee Thieken's Motion to Suppress and Motion in Limine regarding the inadmissibility of expert testimony.
On June 29, 1999, at approximately 1:30 a.m. the Marion City Fire Department responded to a fire at Defendant-Appellee Jeffrey G. Thieken's residence. Upon arrival at the home firefighters noticed that the smoke was emanating from the doors of the upstairs bedroom. After looking through the windows firefighters discovered that there was no actual flame in the room but heavy smoldering was occurring. Because the bedroom doors and windows were closed the firefighters deduced that an immediate opening of the door would cause a flash fire and decided to break a window to reduce the risk of a fire starting and continuing to spread. After the firemen broke open the window they entered the bedroom through the door and extinguished the fire.
Thieken arrived home after the fire had been extinguished. Thieken spoke with two of the fire investigators on the scene, firemen, Robert Cowell and Jeff King. He informed both men that he had left his home to go to the store and he had just returned. The firemen reported that Thieken appeared to be in a daze and extremely lethargic during their several intermittent conversations with him. Shortly after the firemen spoke to Thieken Marion City Police Officer, Anthony Pahl arrived on the scene. He too asked Thieken if he had any information concerning the fire and where he had been while it smoldered. Thieken reiterated essentially the same story to all three men.
The firemen and Officer Pahl agreed that his story seemed suspicious because he kept changing the times and he informed King that he had actually stopped by his wife's home after he stopped at the store, a story slightly different from the initial recounting he gave the firemen. Trying to reconcile the suspicious nature of the fire and Thieken's story Officer Pahl and fireman Cowell asked Thieken if he would like to come to the Fire Station to make a statement. Thieken answered affirmatively and drove himself to the Fire Department.
While inside the Fire station Officer Pahl and firemen King and Cowell interrogated Thieken for several hours. Thieken wrote a statement of his activities earlier that evening and a portion of the interrogation was tape-recorded.[1] Officer Pahl did not ask him if he was intoxicated or had taken drugs before the interview. The tape recording reveals that Thieken's speech is slurred and his comments mostly unintelligible. Officer Pahl did not arrest Thieken after the interrogation rather; he informed Thieken that he would turn the file over to the prosecutor's office and Thieken left on his own accord.
On July 8, 1999, Thieken was indicted for one count of aggravated arson, a felony of the second degree, and one count of arson, a felony of the fourth degree. On July 12, 1999, Thieken appeared for arraignment and entered pleas of not guilty to both counts.
On August 24, 1999, Thieken filed a request for an evidentiary hearing and a motion to suppress any oral, taped or written statements or admissions obtained from Thieken by law enforcement officers on the morning of June 29, 1999. On November 17, 1999, Thieken filed a motion in limine requesting that the State of Ohio be "prohibited from presenting any expert testimony or conclusions regarding the cause of the fire and regarding the degree of combustibility of the bug bomb found in" Thieken's bedroom on June 29, 1999.
On November 22, 1999, the trial court granted Thieken's motionin limine and ordered that the State refrain from "comment on, nor offer any expert opinion testimony unless such expert testimony expresses `probabilities' based on a `reasonable degree of scientific certainty'". The State immediately filed a motion for clarification.
On February 1, 2000, after a two-day hearing, the trial court granted Thieken's motion to suppress. The decision is in part:
 "When the admissibility of a confession has been attacked, the burden is on the state, to prove by a preponderance of the evidence, the voluntary nature of that confession. In this case we have a city police officer who is familiar with the defendant. The testimony of the officer demonstrated that the defendant was not responding to questioning in his normal manner. He was `lethargic', `sad', `upset', and `distressed'. The defendant's handwritten statement was illegible, contrary to the patrolman's prior experience with him.
* * *
 The first contact with the defendant was at approximately 1:30 a.m. and a taped `interview' was completed at 5:48 a.m. The taped interview was remarkably free of any narrative by the defendant, and consisted mainly of leading questions to which the defendant gave ambiguous responses. Based on the evidence elicited by the state, and considering the totality of circumstances, the court must find that the state has failed to meet its burden by a preponderance of the evidence."
The same day the trial court ruled on the request for clarification of its earlier ruling on the motion in limine. It stated:
 "The court does not see the need for clarification. The ruling clearly stated that any expert testimony must be based on a reasonable degree of scientific certainty. This requirement is not inconsistent with the rules of procedure, nor the opinion cited by the state.
 It is therefore ordered that the ruling of the court on the motion in limine shall remain unchanged."
The State filed an immediate Notice of Appeal pursuant to Crim.R. 12(J) certifying that the appeal was not taken for the purpose of delay and that the "rulings" on the motion to suppress and motion in limine "rendered the State's proof with respect to the pending charges of the indictment so weak in its entirety that any reasonable possibility of effective prosecution" had been destroyed. On appeal the State assigns two errors.
 The trial court erred when it suppressed the Defendant-Appellee's confessions as being involuntary when there was no evidence of coercive police conduct and the trial court did not find that was any coercive police conduct.
Initially, we note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Robinson (1994), 98 Ohio App.3d 560,649 N.E.2d 18. Thus, the credibility of witnesses during a motion to suppress hearing is a matter for the decision of the trial court. A reviewing court should not disturb the trial court's findings for issues of credibility. State v. Mills (1992),62 Ohio St.3d 357, 582 N.E.2d 972; State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583. While an appellate court is bound to accept the findings of fact which are supported by competent credible evidence, we must determine independently, without any deference to the decision of the trial court, whether the findings of fact meet the appropriate legal standard. State v. Vance (1994)98 Ohio App.3d 56, 58, 647 N.E.2d 851 quoting State v. Williams
(1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143.
A confession is only admissible if it is voluntarily, knowingly and intelligently given. State v. Edwards (1976), 49 Ohio St.2d 31,358 N.E.2d 1051. Whether a statement was made voluntarily is a question of law. State v. Loza (1994), 71 Ohio St.3d 61, 65,641 N.E.2d 1082. A statement is "voluntary if it is `the product of an essentially free and unconstrained choice by its maker.'"State v. Wiles (1991), 59 Ohio St.3d 71, 81, 571 N.E.2d 97, certiorari denied, Wiles v. Ohio (1992), 506 U.S. 832,113 S.Ct. 99, 121 L.Ed.2d 59 quoting Culombe v. Connecticut (1961),367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037. A finding of "the use of an `inherently coercive tactic' during interrogation is a prerequisite to a finding of involuntariness." State v. Cooey
(1989), 46 Ohio St.3d 20, 28, 544 N.E.2d 895, certiorari denied.Cooey v. Ohio (1991), 499 U.S. 954, 111 S.Ct. 1431,113 L.Ed.2d 482.
To determine whether a confession is involuntary, the court must consider the totality of circumstances in which it was given. In Edwards, the Supreme Court of Ohio held, at paragraph two of the syllabus, that the analysis should include consideration of the following factors:
 "* * * [T]he age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."
See, also, State v. Slagle (1992), 65 Ohio St.3d 597, 600,605 N.E.2d 916, certiorari denied. Slagle v. Ohio (1993),510 U.S. 833, 114 S.Ct. 106, 126 L.Ed.2d 72.
Deception and lying on the part of the police officers during questioning is a factor in determining voluntariness of a confession. Schmidt v. Hewitt (C.A.3, 1978), 573 F.2d 794, 801. It is not however, dispositive without additional evidence. Wiles,supra, at 81. Moreover, a confession made while a person is under the influence of alcohol or drugs does not render a confession inadmissible, although it may affect its weight and credibility.City of Middletown v. Dennis (1954) 67 Ohio L.Abs. 362, 120 N.E.2d 903; 25 A.L.R. 4th 419. However, there must be some evidence presented that the confession given was obtained as a result of diminished capacity to exercise free will. State v.Combs (1991), 62 Ohio St.3d 278, 581 N.E.2d 1071.
The record reveals that Thieken is an adult male who voluntarily followed Officer Pahl and firemen King and Cowell to the fire station for an interview concerning the events preceding the fire at his home. The door to the room where Thieken was being interviewed was left open during the entire interview. At no time during the interview did Thieken ask to leave and after the interview he left of his own free will. Moreover, it is undisputed that Thieken was not in custody or under arrest.
Despite this, Thieken argued at the suppression hearing that he was intoxicated at the time of his statement and the trial court found that his statements were not made "intelligently or voluntarily."
Our review of the tape-recorded interview and Thieken's written statement discloses that the witness's speech is slurred and the writing generally illegible and otherwise incomprehensible. Moreover, that portion of the recording that is understandable displays no categorical confession and the description of his activity is ambiguous at best. The parts of the written statement that are legible appear to describe the filth in Thieken's house and how disheveled the premises appeared. Thieken offers no claim or evidence that he was intoxicated at the time of the interview.
Officer Pahl and Firemen Crowell and King all testified that Thieken did not appear intoxicated or under the influence of any drugs. However, they all agreed that he was acting lethargic and appeared to be in a "daze".
Thus regardless of any inferences to be made that Thieken might have been intoxicated during the taped statement, that sole inference does not support a finding that Thieken's statements were involuntary. The slurred speech and unintelligibility of the statements along with their ambiguity are matters to be considered in determining the sufficiency and weight of the evidence sought to be suppressed here but do not preclude their admissibility. Therefore, error having been shown, Appellant's first assignment of error is sustained.
 The trial court erred when it granted Defendant-Appellees motion in limine which excluded proposed testimony from the State Fire Marshal's Office that the fire could have been started in a manner consistent with Defendant-Appellee's confession.
A ruling on a motion in limine is a "preliminary precautionary ruling by a court in anticipation of its ruling on evidentiary issues at trial." State v. Grubb (1986), 28 Ohio St.3d 199,503 N.E.2d 142; McCabe / Marra Co. v. Dorer (1995) 100 Ohio App.3d 139,652 N.E.2d 236. Upon denial or grant of a motion in limine, ordinarily there is no error preserved for review and such a preliminary ruling ordinarily standing alone is not a final appealable order. State v. Hill (1996), 75 Ohio St.3d 35 195, [75 Ohio St.3d 195 35] 661 N.E.2d 1068. However, the Ohio Supreme Court has held that the State may appeal an evidentiary ruling that has the effect of excluding evidence as if it were a motion to suppress. State v. Malinovski (1991), 60 Ohio St.3d 20,573 N.E.2d 22; State v. Davidson (1985), 17 Ohio St.3d 132. Therefore, a motion in limine may be appealed pursuant to Criminal Rule 12(J) as long as the State certifies as here that the appeal is not taken for the purposes of delay and that the court's ruling on the motion has rendered the state's proof so weak that the chance of an effective prosecution has been destroyed. Crim.R. 12(J).
The record reveals that Thieken filed a motion in limine to suppress the testimony of the State's expert concerning a bug bomb[2] found undamaged in the home. Thieken argued that the prosecutor was attempting to introduce evidence at trial that Thieken could have started a fire with a similar bug bomb. The piece of evidence in question, however, was not itself implicated in the fire. Specifically, the state claims that its expert witness was going to testify to the possibility that the unused bug bomb found in the living room could have exploded even though the report from the arson laboratory revealed that the bug bomb found in the living room was different from the bug bomb in the bedroom that allegedly was involved in the fire.
The trial court granted the motion and the State after receiving clarification filed notice of appeal certifying that it was not appealing for purposes of delay and the ruling had negatively affected its ability to prosecute successfully. As a result, the issue properly before us is whether the trial court should have disallowed the expert testimony offered by the State concerning the possibility that a bug bomb, dissimilar from the exhibit presented to the expert, the remains of which device were found in the bedroom, could have exploded and started the fire.
Because the ruling of the trial court in effect, excluded the expert testimony offered by the state, we must review the decision as if it had suppressed the evidence pursuant to a motion to suppress. As stated previously when reviewing a motion to suppress an appellate court is bound to accept the findings of fact which are supported by competent credible evidence, we must determine independently, without any deference to the decision of the trial court, whether the findings of fact meet the appropriate legal standard. State v. Vance (1994) 98 Ohio App.3d 56, 58,647 N.E.2d 851 quoting State v. Williams (1993), 86 Ohio App.3d 37,41, 619 N.E.2d 1141, 1143.
Evidence Rule 702 addresses the qualifications necessary for an expert to testify:
A witness may testify as an expert if all of the following apply:
 The witnesses testimony relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons.
 The witness is qualified as an expert by specialized knowledge, skill, experience, training or education regarding the subject matter of the testimony.
 The witness' testimony is based upon reliable scientific, technical or other specialized information. To the extent that the testimony reports the results of procedure, test or experiment, their testimony is reliable only if all of the following apply:
 The testimony upon which the procedure, test or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts or principles.
 The design of the procedure, test or experiment reliably implements the theory;
 The particular procedure, test or experiment was conducted in a way that will yield an accurate result.
The record reveals that the State was prepared to offer the following expert testimony concerning a bug bomb that was found undamaged in Thieken's apartment:
 The material safety data sheet of Raid Indoor Fogger (* * * Exhibit One) indicates that it contains 55- 70% of 1, 1, 1,-trichloroethane, 10-15% of soparaffinic hydrocarbon, and 20-30% propane/isobutene. Direct spraying of the contents from the can would not ignite due to the presence of the 1, 1, 1- trichloroethane. However, if contents of the Indoor Fogger were released in a confined space, the flammable combustible components would separate and could ignite if enough air is present."
On its face, the evidence appears to satisfy all the above elements required by Rule 702. The record also reveals that the State sent two bug bombs to the fire marshal for testing. Exhibit 1, upon which the expert offered testimony, was an undamaged bug bomb found in Thieken's home. Exhibit 2 was the bug bomb that supposedly started the fire and was thus severely damaged by the fire. After testing of the two exhibits the fire marshal's report noted that Exhibit 1(the undamaged bug bomb) and Exhibit 2 (the damaged bug bomb) were "Dissimilar Product".[3]
The testimony that was offered on behalf of the State by its expert then claimed that Exhibit 1, the undamaged bug bomb "couldignite if enough air is present." Because the state's theory of the case is not that the bug bomb found in the living room started the fire but that it "could start a fire" in much the same way the fire in the bedroom developed we believe the testimony would be helpful to the jury in understanding the facts of the case and the theory of the prosecution. In view of the precise objection upon which the trial court suppressed the expert testimony, therefore we hold that as a matter of law, the testimony should not have been excluded.
Therefore, error having been shown, Appellant's second assignment of error is also sustained.
Having shown error prejudicial to the state in the errors assigned the judgment of the Court of Common Pleas of Marion is reversed and remanded to the trial court for proceedings in accordance with this opinion.
 ________________________ BRYANT, J.,
HADLEY, P.J., and SHAW, J., concur.
[1] The written statement is completely illegible. Neither the firemen nor the police officer could read the statement. Moreover, when Thieken was asked to read it back to the officer and firemen he, too, was unable to read his own handwriting.
[2] A bug bomb presumably is the sort of aerosol can that can be set off by the depression of a switch and is often used to rid the a residence of bugs and fleas.
[3] The State maintains that arson report is not properly a part of the record. However, the record contains a subpoena duces tecum requiring the fire marshal to produce any and all reports concerning the fire at Thieken's apartment including but not limited to the arson report. The issue of its admissibility is not before us.